UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| WILLIE EDWARD JACKSON, JR., )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>METRO/BI-STATE DEVELOPMENT )<br>AGENCY, )<br>)<br>Defendant )<br>) | Case No. 4:05 CV 907 JCH |

**MEMORANDUM AND ORDER**

This matter is before the Court on Defendant Metro/Bi-State Development Agency's Motion to Dismiss and Motion to Strike. The case arises out of Plaintiff's employment with Defendant. For the reasons discussed below, the Court in part grants and in part denies Defendant's Motion to Dismiss, and grants Defendant's Motion to Strike.

**I.    Background**

Plaintiff worked for Defendant as a Senior Network Analyst. He requested and was granted leave under the Family and Medical Leave Act ("FMLA") from October 15, 2002 through November 5, 2002. (First Amended Complaint, Doc. No. 8, at 3). He claims that while he was on leave, his supervisor, Susan Brocco, locked him out of the computer network and changed his voicemail password. (Id.). When he returned from leave, he was placed on ninety-day probation. He filed a complaint with the Department of Labor. (Id.). That case was closed on May 16, 2003. (Id.).

1

Also in November 2002, Plaintiff made a complaint against Brocco, claiming racial discrimination. (Id.). This investigation was completed in early 2003. (Id.). On August 19, 2003, Brocco issued him a preliminary letter of termination. His employment was terminated on October 2, 2003. (Id.).

Plaintiff filed charges with the EEOC on July 20, 2004. (Complaint, Doc. No. 3, at 3). In his EEOC charges, he only claimed that he was terminated in retaliation for his racial discrimination claims, not for the FMLA complaint. He received a right to sue letter, and filed his pro se Complaint in this Court on June 3, 2005. (Complaint, Doc. No. 1). In his original complaint, Plaintiff again only claimed that he was terminated in retaliation for his racial discrimination claims. (Id. at 4).

On November 14, 2005, he filed his pro se First Amended Complaint. He brings three counts: (I) racial discrimination in violation of Title VII, 42 U.S.C. § 2000e-3; (II) violation of the Family and Medical Leave Act; and (III) violation of the Missouri Service Letter Law. (First Amended Complaint, Doc. No. 8). On December 7, 2005, Defendant filed its Motion to Dismiss (Doc. No. 12) and Motion to Strike. (Doc. No. 14). The matters are fully briefed[1] and ready for disposition.

## II. Discussion

In ruling on a motion to dismiss, the Court must view the allegations in the Complaint in the light most favorable to Plaintiff. <u>Scheuer v. Rhodes</u>, 416 U.S. 232, 236 (1974). A cause of action should not be dismissed for failure to state a claim unless, from the face of the Complaint, it appears beyond a reasonable doubt that Plaintiff can prove no set of facts in support of his claim which would

---

[1] Plaintiff titles some of his responses as motions to strike. The Court will construe them as responses.

entitle him to relief. Conley v. Gibson, 355 U.S. 41, 45-46 (1957); Jackson Sawmill Co., Inc. v. United States, 580 F.2d 302, 306 (8th Cir. 1978). Thus, a motion to dismiss is likely to be granted "only in the unusual case in which a plaintiff includes allegations that show on the face of the complaint that there is some insuperable bar to relief." Fusco v. Xerox Corp., 676 F.2d 332, 334 (8th Cir. 1982).

Defendant argues that portions of Counts II and all of Count III of Plaintiff's First Amended Complaint should be dismissed.

A.   Motion to Dismiss Count II: Family and Medical Leave Act

The Family and Medical Leave Act permits employees to take reasonable leave from work for medical reasons or to care for an ill family member. 29 U.S.C. § 2612. If an employer interferes with this right, the employee may bring a civil action against the employer. 29 U.S.C. §§ 2615(a), 2617(a). FMLA provides a two-tiered statute of limitations. In general, actions must be commenced not later than two years after the date of the alleged violation. But, if the violation is willful, the action must be commenced within three years of the date of the alleged violation. 29 U.S.C. § 2617(c).

Defendant argues that two of the three[2] allegations of violations of FMLA in Count II must be dismissed as untimely. (Defendant's Memorandum in Support of its Motion to Dismiss, Doc. No. 13, at 1). The Court disagrees. Although Plaintiff alleges three adverse actions, they all arose from

---

[2] Plaintiff alleges three adverse actions in his FMLA claim. First, he was locked out of the computer and voicemail systems while on FMLA leave in late 2002. Second, he was put on probation almost immediately after returning from that FMLA leave. And third, he was terminated in retaliation for complaining of these FMLA violations.

3

the same FMLA leave. The statute of limitations does not begin to accrue until the date of the last violation, his termination from employment.. 29 U.S.C. § 2617(c)(1) ("an action may be brought under this section not later than 2 years after the date of *the last event* constituting the alleged violation for which the action is brought.") (emphasis added); 29 U.S.C. § 2617(c)(2) (a case for a willful action "may be brought within 3 years of the date of the *last event* constituting the alleged violation for which such action is brought.") (emphasis added). Because Plaintiff's termination was effective October 2, 2003, he was required to bring his suit by either October 2, 2005, or October 2, 2006.[3] Defendant does not argue that Plaintiff's FMLA claim for his termination is time barred. (Defendant's Reply, Doc. No. 18 ¶ 2).

Defendant's Motion to Dismiss portions of Count II of the First Amended Complaint is therefore denied.

B.    Motion to Dismiss Count III: Missouri Service Letter Statute

The Missouri Service Letter Statute allows discharged employees of corporations the right to request a letter stating why they were discharged, and what their duties had been. Mo. Rev. Stat. § 290.140. Plaintiff alleges that Defendant failed to issue the letter when requested, and is thus liable under the statute for damages. (First Amended Complaint, Doc. No. 8, at 3).

This statute, however, does not apply to Defendant, as Defendant is not a corporation under the statute. Metro/Bi-State Development Agency is a municipal corporation. Barket, Levy & Fine, Inc. v. St. Louis Thermal Energy Corp., 948 F.2d 1084, 1087 (8th Cir. 1991). See also Redbird

---

[3] The record contains insufficient evidence for the Court to determine if Defendant's alleged actions were willful.

Eng'g Sales, Inc. v. Bi-State Dev. Agency, 806 S.W.2d 695, 697 (Mo. Ct. App. 1991); Johnson v. Bi-State Dev. Agency, 793 S.W.2d 864, 866 (Mo. 1990). Other municipal corporations have been found exempt from the Service Letter Statute:

> The terms of service letter § 290.140 apply only to a "corporation doing business in this state." A municipal corporation [there, a local housing authority] was held not a "corporation doing business in this state" within the sense and purpose of § 290.140. Hunt v. St. Louis Housing Auth., 573 S.W.2d 728, 730 (Mo. Ct. App. 1978). "A municipal corporation as that term is used in its broad sense [includes] public and quasi-corporations which act as arms of local government and exercise essential governmental functions. . . . Our Constitution and statutes consistently recognize the difference between private business corporations and municipal corporations. We have found no instance . . . where the word 'corporation' alone in a constitutional provision or in a statute is clearly intended to refer to, or include, a municipal corporation. Indeed, it has been judicially noted that a 'well settled distinction exists between the two' terms." Id.
> In the absence of a legislative intent to impart a different sense . . . the term corporation does not encompass municipal corporation.

Krasney v. Curators of Univ. of Mo., 765 S.W.2d 646, 651 (Mo. Ct. App. 1989). See also Sprenger v. City of Springfield, By and Through Bd. of Public Utilities 629 S.W.2d 493, 494 (Mo. Ct. App. 1981) ("defendant . . . is a municipal corporation not bound by § 290.140 to issue service letters.").

As Defendant is a municipal corporation, and thus not a corporation within the meaning of Mo. Rev. Stat. § 290.140, Count III of the First Amended Complaint is dismissed.

C.      Motion to Strike Claim for Punitive Damages

In his First Amended Complaint, Plaintiff seeks punitive damages and damages for pain and suffering for all three of the counts. Defendant moves to strike the request for non-economic damages, arguing that they are unavailable under FMLA and in Title VII cases against a government entity. (Defendant's Motion to Strike, Doc. No. 14). Plaintiff offers no arguments to the contrary.

5

1. *Punitive Damages under FMLA*

FMLA provides "for damages equal to-- . . .

> (I) any wages, salary, employment benefits, or other compensation denied or lost to such employee by reason of the violation; or
> (II) in a case in which wages, salary, employment benefits, or other compensation have not been denied or lost to the employee, any actual monetary losses sustained by the employee as a direct result of the violation, such as the cost of providing care, up to a sum equal to 12 weeks of wages or salary for the employee;
> > (ii) the interest on the amount described in clause (i) . . . ; and
> > (iii) an additional amount as liquidated damages . . .

29 U.S.C. § 2617(a)(1)(A). The statute does not discuss the availability of punitive or other non-economic damages. The Eighth Circuit has not directly addressed this issue, but a number of other circuits have held that non-economic damages are not available under FMLA. Montgomery v. Maryland, 72 Fed.Appx. 17, 19 (4th Cir. 2003) (unpublished), Nero v. Indus. Molding Corp., 167 F.3d 921, 930 (5th Cir.1999), Brumbalough v. Camelot Care Ctrs., Inc., 427 F.3d 996, 1007 (6th Cir. 2005), Walker v. United Parcel Serv., Inc., 240 F.3d 1268, 1277 (10th Cir. 2001), Graham v. State Farm Mut. Ins. Co., 193 F.3d 1274, 1284 (11th Cir.1999).

This Court holds that non-economic damages are not available under FMLA.

2. *Punitive Damages Under Title VII Claims Against Municipal Corporations*

Defendant argues that, while punitive damages are generally available for race discrimination claims under Title VII, a plaintiff may not recover them against a municipal corporation. (Motion to Strike, Doc. No. 14 ¶ 4). 42 U.S.C. § 1981a(b)(1) states that a "complaining party may recover punitive damages under this section against a respondent (other than a government, government agency or political subdivision) . . . ." Under Missouri statutes, Metro/Bi-state is a "public

6

governmental body." Mo. Rev. Stat. 610.010(4)(g). It has also been characterized as a "branch of the state." Walker v. Bi-State Dev. Agency of Mo.-Il. Metro. Dist., 763 F. Supp. 409, 411 (E.D. Mo. 1991). In addition, the Court has already concluded that Defendant is a municipal corporation. While this is sufficient to conclude that Defendant is not liable for punitive damages under § 1981a, the Court will also look to how other courts have decided this issue under other civil rights statutes.

As a general rule, punitive damages are not available against municipal entities, unless explicitly authorized by statute. City of Newport v. Fact Concerts, Inc., 101 U.S. 247, 259 (1981). This is because the goal of punitive damages is both to punish the wrongdoer and to deter him from future wrongful conduct. Restatement (2d) of Torts § 908. Assessing punitive damages against a municipal corporation will not serve this goal, because the cost of the damages will be borne by the taxpayers. Bolden v. Southeastern Penn. Transp. Auth., 953 F.2d 807, 830 (3d Cir.1991).

A number of other Courts have found that municipal corporations such as Defendant are not liable for punitive damages. In Bolden, the Third Circuit relied on the Supreme Court's decision in City of Newport, 453 U.S. 247, to hold that punitive damages were not available under § 1983 against the Southeastern Pennsylvania Transit Authority ("SEPTA"), a regional transit authority:

> The thrust of the Court's discussion in City of Newport was that punitive damage awards against municipalities would not serve the goals of punishment or deterrence in the same way as punitive damage awards against individuals found to have violated Section 1983. This reasoning is fully applicable to SEPTA. Awarding punitive damages against SEPTA might result in increased taxes or fares and thus punish taxpayers and users of mass transportation who cannot be regarded, except perhaps in an indirect and abstract sense, as bearing any guilt for constitutional violations that SEPTA may commit. Similarly, the deterrent effect that such awards may have on SEPTA decision makers is far more speculative than the deterrent effect of punitive damage awards on individuals who violate Section 1983, and other means of deterring violations by SEPTA officials--including the assessment of damages against offending the officials themselves and adverse employment actions against such officials--are already available. Finally, SEPTA would be a tempting target for large punitive damage

7

awards by juries unduly influenced by SEPTA's size and revenues, which greatly exceed those of many municipalities.

Bolden, 953 F.2d at 830-31 (internal citations omitted). See also Petchem, Inc. v. Canaveral Port Auth., 368 F. Supp. 2d 1292, 1295 (M.D.Fla. 2005) (Port Authority not subject to punitive damages); Everson v. New York City Transit Auth., 216 F. Supp. 2d 71, 81 (E.D.N.Y. 2002) (New York City Transit Authority is not liable for punitive damages under Title VII); Vernon v. Port Auth. of N.Y. and N.J.,154 F. Supp. 2d 844, 860 (S.D.N.Y. 2001) ("municipalities are immune from punitive damages, and as such, entities created by a bi-state compact, such as Port Authority, should be similarly immune").

Based on the reasoning in Bolden and the language of the statute, the Court holds that Defendant is not liable for punitive damages under 42 U.S.C. § 1981a.

Defendant's Motion to Strike Plaintiff's prayer for punitive damages is granted.

# CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Metro/Bi-State Development Agency's Motion to Dismiss Count III (Doc. No. 12), for violation of the Missouri Service Letter is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendant Metro/Bi-State Development Agency's Motion to Dismiss portions of Count II, for violation of the Family and Medical Leave Act (Doc. No. 12) is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant Metro/Bi-State Development Agency's Motion to Strike Plaintiff's prayer for punitive damages (Doc. No. 14) is **GRANTED**.

Dated this 6th day of January, 2006.

/s/ Jean C. Hamilton
UNITED STATES DISTRICT JUDGE